[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-12049
Non-Argument Calendar
_____

D.C. Docket No. 8:16-cr-00453-JSM-AAS-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

EUGENE WILLIS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(April 25, 2019)

Before NEWSOM, BRANCH, and JULIE CARNES, Circuit Judges.

PER CURIAM:

Eugene Willis appeals his convictions on two counts of knowingly taking a motor vehicle by force, in violation of 18 U.S.C. §§ 2 and 2119, and using a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. §§ 2 and 924(c)(1)(A).  On appeal, he contends first that insufficient evidence supports his convictions, and that consequently, the district court erred by denying his motion for a judgment of acquittal.  Separately, Willis argues that the district court abused its discretion in denying his request for a new trial.  After careful review, we affirm.

## I

We review *de novo* a defendant's challenge to the sufficiency of the evidence.  *United States v. Klopf*, 423 F.3d 1228, 1236 (11th Cir. 2005) (citations omitted).  In doing so, we view "the evidence in the light most favorable to the government and accept[] all reasonable inferences in favor of the verdict."  *United States v. Mendez*, 528 F.3d 811, 814 (11th Cir. 2008) (per curiam) (citations omitted).  We will affirm if "a reasonable jury could conclude that the evidence establishes guilt beyond a reasonable doubt."  *United States v. Flanders*, 752 F.3d 1317, 1329 (11th Cir. 2014) (quotations omitted).

The events that led to Willis's convictions started with an early-morning drive with Justin Crumpton and Sedrick Hamilton, his friends and co-defendants.  At some point in the drive, the trio decided to steal a car, and eventually they

followed a Dodge Charger that belonged to victim J.C.  J.C. testified that two men approached him outside of his apartment with guns drawn and demanded his keys. After leaving the scene with J.C.'s Charger, the police soon spotted the vehicle, resulting in a high-speed chase that ended after the car crashed at a nearby McDonald's.  In an attempt to secure a replacement car so as to evade the police, the three entered a Kia Optima while its owner, C.A., was still inside.  They crashed the Optima as well, ran into the restaurant, and were soon apprehended after a standoff with the police.

Construing the evidence in the light most favorable to the government, we conclude that substantial evidence supports Willis's convictions.  As to the theft of the Charger, Crumpton—who agreed to testify against Willis as part of his plea agreement—stated at trial that Willis was part of the initial discussion to steal a car.  And critically, Crumpton further testified that it was Willis and Hamilton that had confronted J.C., and moreover, that the pair drove away in the Charger as Crumpton followed them in their other vehicle.[1]  A reasonable jury, we think, could give credence to Crumpton's testimony and conclude that Willis played a key part in the theft of the Charger.[2]

---

[1] Nevertheless, the jury acquitted Willis on Count II, which charged him with using a firearm during the theft of the Charger.

[2] To be sure, J.C. could not positively identify Willis as one of his attackers in a photo lineup. But importantly, J.C. testified that one of the individuals that had accosted him had covered his face, thereby making it difficult for J.C. to offer a description.  J.C.'s failure to identify Willis

Sufficient evidence similarly supports Willis's conviction for the theft of C.A.'s Kia Optima. According to Crumpton, once the Charger crashed at the McDonald's, Hamilton and Willis were "pulling on [car] doors" in order to "carjack somebody else." A McDonald's customer, moreover, testified that she observed all three defendants enter C.A.'s vehicle, as "one of them got into the passenger side and the other two jumped in the backseat" with C.A. still inside. A responding officer on the scene agreed, testifying that he saw an "elderly female"—*i.e.*, C.A.—"g[e]t out of her vehicle as . . . [the defendants] were attempting to break into it." The evidence suggests that Willis was an active participant in the crime as opposed to "merely present," and thus—at the very least—a reasonable jury could conclude that he aided and abetted his co-defendants and is thus "punishable as a principal" under 18 U.S.C. § 2. *See also United States v. Cruz-Valdez*, 773 F.2d 1541, 1546 (11th Cir. 1985) (en banc) ("A jury may find knowledgeable, voluntary participation from presence when the presence is such that it would be unreasonable for anyone other than a knowledgeable participant to be present.").[3]

---

does not undermine the jury's verdict, as "it is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt." *Flanders*, 752 F.3d at 1329 (quotation omitted).

[3] Willis has abandoned his claim that insufficient evidence supports his conviction under 18 U.S.C. § 924 (c)(1)(A) for using a firearm during the carjacking of C.A's vehicle. "[S]imply stating that an issue exists, without further argument or discussion, constitutes abandonment of that issue and precludes our considering the issue on appeal." *Singh v. U.S. Att'y. Gen.*, 561 F.3d 1275, 1278 (11th Cir. 2009) (per curiam) (citation omitted). Here, Willis merely states that

Because sufficient evidence supports Willis's convictions, the district court did not err in denying Willis's motion for a judgment of acquittal.

## II

Next, Willis argues that the district court erred in denying his motion for a new trial based on what he deems to be "newly discovered evidence" that purports to exonerate him. In particular, Hamilton wrote a letter to Willis's attorney that Willis "really did not have nothing to do wit[h] the crime" and that only Hamilton and Crumpton took part in stealing J.C.'s vehicle. At the hearing, Hamilton elaborated that Willis had not been aware of his co-defendants' plan to steal the Charger, as he had been asleep for most of their drive from Orlando to Tampa.

After hearing Hamilton's testimony, the district court denied Willis's motion for two reasons. First, the court took issue with the fact that Hamilton's new account conflicted with the statement of facts contained in his plea agreement. And second, even if Hamilton was credible, the court concluded that "it [made no] difference which version [of the incident was] correct," as Willis was nevertheless guilty if "he saw the Dodge Charger had been taken, and he joined in the group to follow the Charger to the gas station and g[o]t in the Charger and leave."

---

"there was . . . insufficient evidence by which a reasonable juror could conclude that Willis took or aided and abetted in the use or attempted use of a firearm in the taking or attempted taking" of C.A.'s vehicle. This conclusory statement is plainly insufficient to preserve this issue on appeal.

5

We review a district court's denial of a motion for a new trial under Federal Rule of Criminal Procedure 33 for an abuse of discretion. *United States v. Campa*, 459 F.3d 1121, 1151 (11th Cir. 2006) (en banc). "Motions for a new trial based on newly discovered evidence," we have said, are "highly disfavored" and "should be granted only with great caution." *Id.* To succeed on such a motion, a defendant bears the burden of establishing

> that (1) the evidence was discovered after trial, (2) the failure of the defendant to discover the evidence was not due to a lack of due diligence, (3) the evidence is not merely cumulative or impeaching, (4) the evidence is material to issues before the court, and (5) the evidence is such that a new trial would probably produce a different result.

*United States v. Jernigan*, 341 F.3d 1273, 1287 (11th Cir. 2003) (quotations omitted).

Willis has not met his burden here. Even assuming that he has satisfied the first four prongs as outlined in *Jernigan*, he has not shown that Hamilton's testimony, if introduced at a new trial, "would probably produce a different result." *Id.* The district court questioned Hamilton's credibility, in that he twice swore under oath that the facts contained in his plea agreement—including those that implicated Willis—were true. Hamilton's conflicting statements would undoubtedly be subject to impeachment at a new trial, and thus a jury may have discounted Hamilton's testimony. *See United States v. Lee*, 68 F.3d 1267, 1274 (11th Cir. 1995) (concluding that "it does not appear that a new trial would

produce a different result since the government could impeach [the recanting witness] on many inconsistencies using his trial testimony").  Thus, we cannot say that the district court abused its discretion in denying Willis's request for a new trial.

**AFFIRMED.**