[DO NOT PUBLISH]

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 20-14380

Non-Argument Calendar

_____

MAUDILIO LOPEZ-GARCIA,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A075-431-320

_____

Before WILSON, JORDAN, and ROSENBAUM, Circuit Judges.

PER CURIAM:

Maudilio Lopez-Garcia seeks review of a final order of the Board of Immigration Appeals affirming an immigration judge's denial of his motion to rescind his *in absentia* removal order and reopen his proceedings. The BIA concluded that his motion should be denied because he had received proper notice of the consequences of failing to appear before the IJ.

Mr. Lopez-Garcia argues that the BIA erred in denying his motion because the notices that he received did not explain all of the consequences; they did not explain that the *in absentia* removal order could only be rescinded in two ways or that judicial review of that order was limited to review of the notice's validity, the reasons for his absence, and whether he is removable. He admits that the notices did warn him that a removal order could be entered against him as a consequence, but he contends that even this warning was not proper because it used the word "may" where the statute uses "shall." The government argues that the notices contained the required explanation of the consequences, and did not need to explain the legal procedure necessary to reverse that consequence. Further, the government argues that the word "may" was not improper.

For reasons explained below, we deny Mr. Lopez-Garcia's petition for review.

## I

Mr. Lopez-Garcia, a native and citizen of Guatemala, entered the United States around June of 1997.  He was fifteen years old and without his family when he crossed the border; he came because his family was "very poor."  A.R. at 90.

In August 1997, Mr. Lopez-Garcia was apprehended by the Immigration and Naturalization Service and issued a Notice to Appear, which charged him as removable under 8 U.S.C. § 1182(a)(6)(A)(i), for being present in the United States without being admitted or paroled.  Among other things, the form notice stated:

> If you fail to attend the hearing at the time and place designated on this notice, or any date and time later directed by the Immigration Court, a removal order may be made by the immigration judge in your absence, and you may be arrested and detained by the INS.

*Id.* at 164.  But Mr. Lopez-Garcia could not read or understand the Notice to Appear, so he took it "to a lady who had a money transfer store, who had said that she understood the [i]mmigration [l]aw." *Id.* at 90.  She told him not to go to court because he could have to "attend a lot of hearings" and would be told that he "ha[s] to study." *Id.*

In September 1997, the IRS sent Mr. Lopez-Garcia a Notice of Hearing.  It stated the date and time of the hearing.  It also stated:

Failure to appear at your hearing except for excep-
tional circumstances may result in one or more of the
following actions: (1) You may be taken into custody
by the Immigration and Naturalization Service and
held for further action. OR (2) Your hearing may be
held in your absence under section 240(b)(5) of the
Immigration and Nationality Act.  An order of re-
moval will be entered against you if the Immigration
and Naturalization Service established by clear, une-
quivocal and convincing evidence that a) you or your
attorney has been provided this notice and b) you are
removable.

*Id.* at 162.

On December 17, 1997, the hearing was conducted *in absen-
tia.*  Mr. Lopez-Garcia did not attend because he "did not have the
means to attend" and could not afford to be told to go to school
instead of working. *Id.* at 90–91.  The IJ found removability based
on the evidence submitted by the government.  Mr. Lopez-Garcia
was sent a copy of the order.

Mr. Lopez-Garcia later applied for several administrative
stays.  In April of 2015, he was granted an administrative stay of
one year.  But he was denied a further stay in October of 2019.

In March of 2020, Mr. Lopez-Garcia filed a motion to rescind
the December 1997 *in absentia* removal order and reopen his pro-
ceedings.  The IJ denied his motion, finding that the Notice to Ap-
pear "contained the appropriate failure to appear warnings." *Id.* at
63.  The IJ also noted that Mr. Lopez-Garcia did not address why

he waited over 22 years to file the motion to reopen or what he would have said had he attended the hearing.  Nor did he argue that he was eligible for relief at the time of filing his motion.

Mr. Lopez-Garcia appealed to the BIA, which denied his motion and dismissed his appeal.  The BIA found that he had received the required and proper notice of the consequences of failing to appear at his hearing.  Further, the BIA found that he did not need to be placed on notice of "collateral consequences" of failing to appear, such as restrictions on how to seek recission of the order and the scope of judicial review.  *Id.* at 4.

## II

Where, as here, the BIA does not expressly adopt the IJ's decision, we review only the BIA's decision.  *See Singh v. U.S. Att'y Gen.*, 561 F.3d 1275, 1278 (11th Cir. 2009).  We review the BIA's denial of a motion to reopen removal proceedings for abuse of discretion, but we review legal issues *de novo.  See Bing Quan Lin v. U.S. Att'y Gen.*, 881 F.3d 860, 872 (11th Cir. 2018).

We review questions of statutory interpretation *de novo*, and "we begin by examining the text of the statute to determine whether its meaning is clear."  *Silva-Hernandez v. U.S. Bureau of Citizenship & Immigr. Servs.*, 701 F.3d 356, 361 (11th Cir. 2012).  If it is clear, "that is the end of the matter."  *Id.*

A motion to reopen an *in absentia* removal order may be made at any time but, if filed more than 180 days after the order, the motion must demonstrate that "the alien did not receive notice

in accordance with paragraph (1) or (2) of [8 U.S.C. §] 1229(a) of this title" (or that he was in custody) for the order to be rescinded. *See* 8 U.S.C. § 1229a(b)(5)(C). Notice according to the statute must, among other things, specify "[t]he consequences under [8 U.S.C. §] 1229a(b)(5) . . . of the failure, except under exceptional circumstances, to appear at such proceedings." 8 U.S.C. § 1229(a)(1)(G)(ii). Titled "Consequences of Failure to Appear," § 1229a(b)(5) contains five subparagraphs. 8 U.S.C. § 1229a(b)(5). Subparagraph A, titled "In general," states:

> Any alien who, after written notice . . ., does not attend a proceeding under this section, shall be ordered removed in absentia if the Service establishes by clear, unequivocal, and convincing evidence that the written notice was so provided and that the alien is removable (as defined in subsection (e)(2)).

*Id.* Subparagraph D, titled "Effect on judicial review," says that petitions for review of orders entered *in absentia* shall "be confined to (i) the validity of the notice provided to the alien, (ii) the reasons for the alien's not attending the proceeding, and (iii) whether or not the alien is removable." *Id.* And subparagraph C explains what is required for recission of the order. *See id.*

Mr. Lopez-Garcia argues that his notices were not sufficient because they did not discuss rescission or judicial review. This argument fails because those are not consequences, and therefore do not need to be mentioned in the notices.

Although § 1229(a)(1)(G)(ii) refers to "consequences" in the plural and to § 1229a(b)(5) generally (as opposed to specifically § 1229a(b)(5)(A)), the notice need not contain information regarding rescission or review of an *in absentia* order to be complete because those are not consequences. A "[c]onsequence" is "[a] result that follows as an effect of something that came before." *See* Black's Law Dictionary 381 (11th ed. 2019). The entry of an *in absentia* removal order is a result that follows as an effect of Mr. Lopez-Garcia's failure to attend the hearing, where evidence of his removability was presented. The procedure by which he can rescind that order and the limited judicial review are not the result of his failure to attend the hearing; they instead describe the process in which the result can be undone. *See* 8 U.S.C. §§ 1229a(b)(5)(C) and (D). Further, the recission and review are not automatic results of either a failure to attend the hearing or the entry of the order, as some people against whom a removal order is entered may never choose to file a motion to reopen.

Mr. Lopez-Garcia's other argument, that the Notice to Appear was faulty because it used the word "may" instead of the word "shall," is also unavailing. First, the Notice was not incorrect in stating "a removal order *may* be made by the immigration judge in your absence" A.R. at 164 (emphasis added)—because it would only be made, and required, if evidence presented at the hearing showed that he was removable. *See* 8 U.S.C. § 1229a(b)(5)(A). And Mr. Lopez-Garcia concedes that, "standing alone," the Notice of Hearing's phrasing of that same warning "would have properly

warned him." Pet'r's Br. at 65. Second, the Notice of Hearing's warning that "[y]our hearing may be held in your absence" does not, as Mr. Lopez-Garcia argues, "undermine" the other warnings through its use of the word "may." Contrary to Mr. Lopez-Garcia's assertions, it was not required that the hearing be held in his absence. *See Matter of Cruz-Valdez*, 28 I. & N. Dec. 326, 326–28 (2021) (stating that administrative closure has been used by immigration judges "for many decades"). The notices he received were sufficient.

### III

We deny Mr. Lopez-Garcia's petition.

**PETITION DENIED.**